**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alicia Merriott, | No. CV-17-00138-TUC-LCK |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill, | |
| Defendant. | |

Plaintiff Alicia Merriott filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Merriott's Opening Brief, Defendant's Responsive Brief, and Merriott's Reply. (Docs. 14, 15, 17.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 21.) Based on the pleadings and the administrative record, the Court affirms the Commissioner's decision.

## PROCEDURAL HISTORY

Merriott filed an application for Supplemental Security Income (SSI) on March 26, 2013. (Administrative Record (AR) 181.) She alleged disability from December 15, 2008. (*Id.*) Merriott's application was denied upon initial review (AR 95-106) and on reconsideration (AR 107-21). A hearing was held on October 26, 2015 (AR 59-93), after which an ALJ found that Merriott was not disabled because she could perform work available in the national economy (AR 22-33). The Appeals Council denied Merriott's request to review the ALJ's decision. (AR 1.)

## FACTUAL HISTORY

Merriott was born on September 19, 1976, making her 36 years of age at the time her SSI application was submitted. (AR 181.) Merriott left school after eighth grade. (AR 202.) She has been employed twice, for a few months each time, in 2007 and 2008. (AR 203, 263.)

The ALJ found Merriott had one severe impairment, affective disorder. The ALJ determined Merriott had the RFC to perform work at all exertional levels limited to occupations that do not require complex written or spoken communication; simple, routine, repetitive tasks that can be learned hands-on or by observation; and only occasional interaction with coworkers and the public. (AR 26.) Based on the testimony of a vocational expert, the ALJ concluded that Merriott could perform work that exists in significant numbers in the national economy. (AR 33.) In particular, she could work as a janitor/cleaner, assembler, and dishwasher/kitchen helper. (*Id.*)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI claims. 20 C.F.R. § 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. § 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings

of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The Court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Merriott argues the ALJ committed three errors: (1) she failed to consider an examining psychologist's opinion and test results; (2) she failed to consider whether Merriott met Listing 12.05C; and (3) she failed to develop the record regarding Merriott's cognitive abilities.

### Examining Psychologist

Merriott argues that the ALJ failed to mention the opinion of psychologist Dee Winsky, Ph.D. Dr. Winsky examined Merriott on February 7, 2013, in conjunction with a CPS case. She found evidence of PTSD, anxiety, ADHD, and dementia with corresponding memory deficits. (AR 307.) She tested Merriott and concluded she fell in the intellectually deficient range, reading at a fifth grade level. (*Id.*) And, on the Basic Personality Inventory, Merriott scored high for a Thinking Disorder, indicating she was

"markedly confused, distractible and disorganized"; and she "cannot remember even simple things day to day." (*Id.*)

Under the regulations, medical opinions are "judgments about the nature and severity of your impairments(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s) and your physical and mental restrictions." 20 C.F.R. § 416.927(a)(1). The ALJ was required to evaluate the portions of Dr. Winsky's report that qualified as medical opinion and failed to do so. 20 C.F.R. § 416.927(b) & (c) ("we will always consider the medical opinions in your case record"; "we will evaluate every medical opinion we receive.") Defendant argues any error was harmless. Thus, the Court evaluates the record as a whole to determine if the error would alter the outcome of Merriott's case; if not, the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (finding error harmless if it was "inconsequential to the ultimate nondisability determination") (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 553 F.3d 1155, 1162 (9th Cir. 2008)).

Merriott argues that if the ALJ had credited Dr. Winsky's opinion, she would have determined Merriott was markedly limited in both activities of daily living and concentration, persistence and pace. First, with respect to activities of daily living, Dr. Winsky offered a "somewhat guarded" prognosis of Merriott's ability to parent her children but concluded that if she continued with the case plan and substance abstinence she might be able to regain custody. (AR 309.) Merriott subsequently regained custody of her children. Dr. Winsky provided no other "opinion" on Merriott's limitations in activities of daily living. Even if the ALJ had weighed Dr. Winsky's report, it did not necessitate a finding of marked limitations in activities of daily living. The other medical opinion evidence of record, which the ALJ gave great weight, found only mild and moderate limitations in activities of daily living. (AR 99, 114.)

Second, Dr. Winsky found Merriott had limited cognitive abilities and early signs of dementia, including memory deficits, confusion, and inability to remember things day to day. (AR 307.) Dr. Winsky did not offer a direct opinion on Merriott's limitations in

concentration, persistence, and pace. She found that Merriott scored high in distractibility (AR 307) but stated that Merriott actively participated during the interview (although she became fatigued) (AR 303). It is not evident that the ALJ would have founded a marked limitation after considering Dr. Winsky's opinion. The other medical opinion evidence of record, which the ALJ gave great weight, found moderate limitations in concentration, persistence, and pace. (AR 114, 332.)

The ALJ gave great weight to other examining and reviewing physicians who identified Merriott as having cognitive limitations. Dr. Sticken found Merriott had mild cognitive impairment based on an MMSE score of 22/30, and she noted difficulty in maintaining attention and severely compromised delayed recall. (AR 329.) Dr. Marks diagnosed ADHD rule out borderline intellectual functioning (and OCD rule out borderline intellectual functioning). (AR 428-29.) He noted that Merriott had attentional difficulty, which could be a symptom of lower intellectual functioning. (AR 429.) Dr. Marks concluded Merriott could learn hands-on work that was simple and repetitive, if the tasks did not require high-level cognition. (AR 430.) Similarly, Dr. CCG found Merriott had marked limitations in responding to detailed instructions and limited her to simple tasks. (AR 116, 118.) The ALJ incorporated these limitations by restricting Merriott to occupations that do not require complex written or spoken communication but only require simple, routine, repetitive tasks that can be learned hands-on or by observation. (AR 26.)

The ALJ's RFC incorporated three medical opinions that Merriott had cognitive impairments, including limitations in attention and ability to handle more than simple instructions or tasks. If the ALJ had considered the opinion of Dr. Winsky it would not have altered his findings that incorporated similar findings by other doctors. Therefore, the error was harmless.

**Listing 12.05C**

Merriott argues that her test results implicated Listing 12.05C, and the ALJ erred in not evaluating whether she could meet or equal this listing. Listing 12.05C requires:

"A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Additionally, all subsets of Listing 12.05 are based on "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."

Merriott concedes that, based on the lack of full-scale IQ score in the record, she did not meet Listing 12.05. However, she contends the ALJ could have found the listing was equaled.[1] Although the ALJ did not find that Merriott had an intellectual disorder at Step 2, there are several medical opinions indicating an intellectual deficit. (AR 307 (intellectually deficient range of ability), AR 329 (mild cognitive impairment), AR 428-29 (rule out borderline intellectual functioning).) For an impairment listed in the appendix (such as 12.05 intellectual disorder), if the claimant does not exhibit one of the findings or does exhibit the finding but not at the required level of severity, equivalence will be met if the claimant has "other findings related to your impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1). Merriott argues that she satisfies equivalence based on her borderline intellectual functioning and mental impairment. (Doc. 14 at 15.)

Under the DSM-IV, borderline intellectual functioning was defined by an IQ of 71 to 84. Am. Psych. Ass'n, Diagnostic & Statistical Manual of Mental Disorders 48 (4th ed. 2000).[2] Even if Merriott met the criteria for a borderline intellectual functioning

---

[1] Merriott argues that when a claimant posits a plausible theory for equaling a listing, the ALJ must evaluate that possibility. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (concluding the claimant's impairments did not equal a listing). Merriott argues the ALJ erred in not assessing Listing 12.05C equivalence. In the pre-hearing brief, Merriott argued that "[w]ith an appropriate full scale IQ exam, listing 12.05 should be considered." (AR 297-98.) Thus, Merriott argued she could meet Listing 12.05 (with a full scale IQ test), but did not argue that her impairments "equaled" a listing in severity.

[2] The DSM-V, published in 2013, removed the IQ boundaries for a diagnosis of borderline intellectual functioning.

- 6 -

diagnosis, which the ALJ did not find at Step Two,[3] Listing 12.05C requires an IQ below the 71 start value of the borderline intellectual functioning range. Merriott argues there is a correlation between Shipley scores (a test administered by Dr. Winsky) and IQ scores. However, Dr. Winsky did not report Merriott's Shipley score (merely the range), and there is no record evidence, nor argument, demonstrating how that range would correlate to an IQ number. The ALJ acknowledged that medical opinions found Merriott had cognitive limitations, including a score of 22/30 on the MMSE (suggesting only mild impairment). However, Merriott has not established equivalence of the stated IQ range under 12.05C.

Further, there is not sufficient record evidence to establish the onset of a cognitive impairment prior to age 22. The only relevant evidence is that Merriott reads at a fifth grade level, received special education services, and left school after eighth grade. (AR 82, 306, 307.) The administrative record contains no school records or testing and no opinion evidence of Merriott's abilities prior to age 22. There is evidence to undermine an assumption that any cognitive defects were present during Merriott's developmental period. Record evidence indicates that Merriott's limited education and/or cognitive deficits may be connected to her drug use. Merriott acknowledged that she began using drugs at 13 and left school after falling behind due to ongoing drug use in eighth grade. (AR 303, 306.) Also, Dr. Winsky indicated Merriott may have suffered brain damage due to her extended drug use, which might be the source of her cognitive problems. (AR 309.)

Based on the record before the ALJ, she did not err in her conclusion that Merriott's impairments did not equal Listing 12.05C. *See Didway v. Astrue*, 303 F. App'x 553, 554 (9th Cir. 2008).

**Record Development**

Merriott argues there was record evidence of her cognitive impairments. Specifically, that she scored in the intellectually deficient range on the Shipley Institute of Living Scale, reads at a fifth grade level, and scored 22/30 on the MMSE. Merriott

---

[3] The ALJ included limitations in Merriott's RFC that reflect cognitive deficits.

argues that she may have met Listing 12.02 or 12.05 if the ALJ had obtained full-scale IQ scores. Therefore, the ALJ erred in not requesting IQ testing.

In the pre-hearing brief, Merriott requested post-hearing development if there was not sufficient evidence to decide in her favor. (AR 293.) At the hearing, Merriott's counsel indicated that she was seeking cognitive testing but that it had not been scheduled. (AR 63.) Counsel requested that the ALJ consider whether further development was required. (AR 64.) However, an ALJ must obtain additional evidence only when she determines the record is ambiguous or is not adequate to allow her to evaluate the evidence. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Merriott does not address the specific requirements of Listings 12.02 and 12.05 to support her argument that she could meet either one with a valid IQ score. Listing 12.02, Organic Mental Disorders (as it existed in January 2016), does not require an IQ score. However, it does employ the paragraph B criteria, which the ALJ found were not met as to other listings. For those reasons, the ALJ did not err in failing to obtain an IQ test in order to evaluate Listing 12.02.

Listing 12.05 requires a valid IQ score. However, it also requires evidence of onset during the developmental period, or before age 22. As discussed above, there is very sparse record evidence to satisfy that criteria. Merely obtaining an IQ score would be insufficient to satisfy Listing 12.05 because Merriott did not submit evidence of onset prior to age 22.

The ALJ took Merriott's cognitive limitations, as determined by several medical opinions, into account when formulating her RFC. Those opinions were consistent with Dr. Winsky's opinion and did not create ambiguity regarding Merriott's functional abilities. Because a full-scale IQ score would not have altered the ALJ's analysis of Listing 12.02 and 12.05, development of the record to obtain such testing was not required.

**CONCLUSION**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The Court concludes the ALJ did not err as to any of the claims raised by Merriott. Therefore, Merriott is not entitled to relief and her appeal is denied.

Accordingly,

**IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

Dated this 26th day of July, 2018.

_____

Honorable Lynette C. Kimmins
United States Magistrate Judge